

RESEARCH SERIES ON THE RECIDIVISM OF
FEDERAL GUIDELINE OFFENDERS

RELEASE 2

# RECIDIVISM
# AND THE "FIRST OFFENDER"

A COMPONENT OF THE
FIFTEEN YEAR REPORT
ON THE U.S. SENTENCING COMMISSION'S
LEGISLATIVE MANDATE



May 2004

# RUBEN CASTILLO
*Vice Chair*

# WILLIAM K. SESSIONS, III
*Vice Chair*

# JOHN R. STEER
*Vice Chair*

# RICARDO H. HINOJOSA
*Commissioner*

# MICHAEL E. HOROWITZ
*Commissioner*

# MICHAEL E. O'NEILL
*Commissioner*

# EDWARD F. REILLY, JR.
*(Ex officio)*

# DEBORAH J. RHODES
*(Ex officio)*

**Commission Staff**

Linda Drazga Maxfield
Miles Harer*
Timothy Drisko
Christine Kitchens
Sara Meacham

*while serving at the U.S. Sentencing Commission

The "first offender" philosophy in sentencing policy generally encourages lower sentences for offenders who have little or no prior criminal conduct. This philosophy, which can be derived directly from the guidelines' Chapter Four introductory commentary, postulates that first offenders are less culpable and less likely to re-offend. As such, they are deserving of reduced punishment. Congress itself in the Sentencing Reform Act of 1984 promotes the first offender philosophy, citing the relevance of reduced sentencing levels for first offenders under the federal sentencing guidelines.[1]

Under federal sentencing guidelines, offenders with the least number of prior criminal convictions are classified into Criminal History Category I ("CHC I"). As developed by the initial Commissioners, CHC I is more broadly defined than "first offenders." While offenders with zero criminal history points are included, CHC I also applies to offenders with a prior conviction receiving one criminal history point. Further, any offender in CHC I may have one or multiple additional prior convictions if such convictions are excluded from receiving points under the Chapter Four definitions.

Following the adoption of federal sentencing guidelines in 1987, the U.S. Sentencing Commission initiated several investigations to refine a workable "first offender" concept within the guideline criminal history structure.[2] Staff working groups started by analyzing the first offender in terms of CHC I. Using district court data supplied through the Commission's sentence monitoring function, subsequent working groups concluded that a narrower first offender definition better identified those deserving the least severe sentence than did the broad definition of first offender appearing in 28 U.S.C. § 994(j).[3] Each successive working group built upon the previous efforts and designed its set of first offender eligibility criteria. Over time, the proposed first offender definitions grew generally more restrictive, with one definition even requiring that first offenders have no criminal events, not even prior arrests.

The efforts of these past criminal history staff working groups have not resulted in a guideline amendment to establish a first offender provision. In part, this stems from unresolved policy and legal issues, such as the accuracy and appropriateness of prior arrest reporting or the availability of prior court disposition data. The inaction also is tied to incomplete information on the impact of a first offender provision.

Prior research by staff working groups documented how the various first offender definitions reflected low culpability characteristics central to the guidelines' Chapter Four. Their proposed first

---

[1]28 U.S.C. § 994(j).

[2]U.S. Sentencing Commission, 1989; 1990; 1991a and 1991b; 1997; Ricca, 1997; 2001a; O'Neill, 2001.

[3]28 U.S.C. § 994(j)) describes a "first offender" as one who "has not been convicted of a crime of violence or an otherwise serious offense."

offender definitions captured offenders with few or no prior criminal history events, where prior events that were present were not serious. What the prior staff working group research did not – and could not (because of data unavailability) – address was an evaluation of recidivism behaviors under various alternative first offender definitions.

This report responds to the previous lack of empirical information on offender recidivism by drawing upon the Commission's 2003 recidivism project data. Extrapolating from the results of previous working groups' first offender analyses, this report presents a set of alternative first offender definitions. It documents the characteristics of offenders meeting the proposed alternatives, illustrating that those meeting the definitions are unique among federal offenders in terms of low culpability. The analysis then underscores the distinctive characteristics of the proposed first offender groups by presenting their consistent patterns of lower recidivism rates. The research goal is to identify criteria that define a low culpability and low recidivism first offender grouping as a first step in the development of a possible guideline revision.

## A. Commission Focus on First Offender Issues

The first offender adjustment was first studied at the Commission in late 1989 as part of a larger proposed revision of the criminal history chapter. This effort suggested that an additional CHC for "true" first offenders be developed in order to differentiate between offenders whose instant offense was their first contact with the criminal justice system and offenders whose instant offense was not their first contact with the criminal justice system.[4] A staff criminal history working group generated two alternative proposals for handling first offender issues. The first proposal classified all defendants with zero criminal history points as "true" first offenders and redistributed all remaining offenders among the six pre-existing CHC categories. The second proposal classified only those defendants with no prior "criminal trouble" as "true" first offenders. The staff defined "prior criminal trouble" to mean any prior arrest, whether or not it led to a conviction. However, two factors caused the criminal history working group to recommend that the Commission further study the issue prior to any action. The first factor was the cited unreliability of arrest records at that time. The second factor was the existing §4A1.3 (adequacy of the CHC) guideline that expressly stated that the presence of a prior arrest by itself was not sufficient justification for a sentence enhancement.

Approximately one year later, in late 1990, the Commission staff again addressed the subject of the first offender as part of a larger review of the criminal history chapter. A criminal history working group noted that CHC I offenders represented a wide variety of characteristics and offenses. There even were great differences among offenders with zero criminal history points: some had convictions that did not receive points, while others had no prior arrests at all. Taking these differences into account, the working group defined the "true" first offender as any defendant who

---

[4]U.S. Sentencing Commission, 1989.

had no prior convictions nor prior criminal conduct.[5] Due to constitutional and policy considerations, the criminal history working group did not advocate excluding defendants from a first offender adjustment based solely on prior arrests or charges not leading to convictions. However, the criminal history working group maintained that provisions could be drafted in such a way that any "proven" criminal conduct would exclude a defendant from first offender status.

In October of 1991, another staff criminal history working group circulated its report.[6] After an extensive case review, the criminal history working group divided the defendants with zero points into three groups: (1) "true" first offenders, (2) first offenders, and (3) other offenders with zero criminal history points. Offenders in the first group, "true" first offenders, were defendants with no prior contact with the criminal justice system of any kind. Those in the second group, first offenders, were offenders with prior arrests or dismissed charges. All remaining zero point offenders were in the third group.[7] Simultaneously with the release of this criminal history report, a separate preliminary report by a sentencing alternatives working group discussed a possible sentencing reduction for the first offender:[8] a two-level reduction for offenders who had zero criminal history points and used neither violence nor weapons during the instant offense. The significance of this proposal was that it both responded to the intent of 28 U.S.C. §994(j) and finessed the need to create a new "first offender" CHC.[9] The sentencing alternatives working group also described another first offender approach permitting first offenders access to probation or prison alternatives.

A criminal history working group established in fiscal year 2000 again examined first offenders and other issues regarding the criminal history chapter.[10] In a more empirical context, this working group pursued similar definitions of first offenders. Most recently, in a 2001 law review article, Commissioner Michael O'Neill identified and described first offenders sentenced under the federal sentencing guidelines.[11] Among other things, the article applied the first offender label to those without any prior convictions and suggested that first offender provisions could be incorporated into the guidelines either as a new first offender CHC or as a guided downward departure. The article ended by recognizing the limitations of a first offender analysis without the empirical advantage of recidivism data, recognizing that recidivism data permit complete

---

[5]U.S. Sentencing Commission, 1990. The "true" first offender also included offenders whose only convictions were for minor offenses listed in guideline §4A1.2(c)(2) as never receiving criminal history points under the guidelines: hitchhiking, juvenile status offenses and truancy, loitering, minor traffic offenses such as speeding, public intoxication, vagrancy, and offenses "similar" to these, "by whatever name they are known."

[6]U.S. Sentencing Commission, 1991a.

[7] Offenders in this third group, even though having zero criminal history points, could have prior convictions that did not receive points because of the guideline exclusion rules (e.g., decay factor, juvenile status offense, etc.).

[8]U.S. Sentencing Commission, 1991b.

[9]28 U.S.C. §994(j) states in part that, "the Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense . . ."

[10]U.S. Sentencing Commission, 2001a.

[11]O'Neill, 2001.

descriptions of the past criminal behavior of potential first offender groupings. In addition, the access to recidivism data allows researchers to fully analyze recidivism risk under alternative first offender definitions and compare this risk to repeat offenders.

## B. Looking at First Offenders with Recidivism Data

It is, in fact, this lack of access to a recidivism datafile that kept the Commission from acting on a first offender proposal. The previous criminal history working groups described potential first offender groups using the following types of available information: number of offenders in CHC I, number of criminal history points, number of prior convictions, or types of prior convictions. Although theoretically and conceptually rigorous, these analyses could not access re-offending outcomes for first offenders. In order to address all relevant sentencing goals with criminal history measures, estimates are needed of recidivism rates and re-offending risks associated with any potential first offender grouping. Whereas these data did not previously exist, in the intervening years the Commission launched a major study of recidivism under the guidelines.

The Commission's recidivism project datafile contains details on the offenders' prior criminal history, including both arrests and convictions, characteristics of the instant offense, demographic information, and subsequent re-offending. This made it possible for the first time to examine and compare in-depth background and recidivism behavior among plausible first offender groupings. The recidivism project collected data for more than 6,000 U.S. citizen offenders sentenced in fiscal year 1992.

The recidivism data analysis reveals, across different groupings of offenders, that some types of offenders recidivate at higher rates than others. Assessing this information helps in differentiating among the first offender definitions not only for descriptive classifications but also for additional predictive criteria relevant to first offender analyses.

## C. Proposed First Offender Definitions

Prior criminal history working groups identified the best theoretical and practical source of first offenders as defendants in CHC I with zero criminal history points. The annual proportion of federal offenders with zero criminal history points is substantial. In fiscal year 2001, more than four out of every ten federal offenders (42.2%) had zero criminal history points for their Chapter Four computation.[12] This proportion was even higher in fiscal year 1992, when nearly half (49.9%) of citizen offenders had zero criminal history points.

Even within the group of offenders with zero points, additional distinctions are possible.

---

[12] U.S. Sentencing Commission, 2001b.

Past research at the Commission differentiates among zero point offenders based on the offenders' numbers of prior arrests and prior convictions.[13]  Synthesizing the definitions of first offenders that arose from prior Commission working group studies, the following three groups emerge.

**Three Proposed Federal First Offender Groups**

| Proposed First Offender Groups | Zero Criminal History Points? | Prior Arrests? | Prior Convictions? | % of All Citizen Offenders |
|---|---|---|---|---|
| **A** *(no arrests)* | Yes | No | No | 29.8 |
| **B** *(no convictions)* | Yes | Yes | No | 8.4 |
| **C** *(minor conv. only)* | Yes | Yes | §4A1.2(c)(2) offenses only | 1.5 |

All three groups require that the offenders have zero criminal history points.  Group A offenders have no prior arrests.  Group B offenders have prior arrests, but no prior convictions.  Group C offenders can have prior convictions, but they must fall under the minor offenses listed in guideline §4A1.2(c)(2) that never count toward criminal history points.[14]

 Of the 1992 annual total of 29,749 citizen offenders, 8,854 offenders (29.8%) are in group A.  A total of 2,499 fiscal year 1992 offenders (8.4%) are in group B, with 460 offenders (1.5%) in group C.  The substantial number of offenders potentially meeting a first offender definition is impressive:

- for all citizen offenders sentenced in fiscal year 1992, roughly 40 percent (39.7%) meet the definition of group A, group B, or group C, and

- for all citizen offenders sentenced in fiscal year 1992 *and having zero*

---

[13]A prior conviction may be excluded from the criminal history computation if, for example: it occurred outside of a five- or ten-year specified time frame; if it was a Native American or foreign conviction; if it was related to the instant offense;  if it were a minor offense and met specified conditions; etc.

[14]The §4A1.2(c)(2) listed offenses that never receive points under the guidelines are: hitchhiking, juvenile status offenses and truancy, loitering, minor traffic offenses such as speeding, public intoxication, and vagrancy.  Offenses "similar" to these, "by whatever name they are known," also never receive criminal history points.  A previous criminal history working group suggested that offenders with only §4A1.2(c)(2) "never count" convictions be included in the first offender definition.  These "never count" minor offenses are consistent with a first offender criterion because their presence does not improve recidivism prediction, as documented in the companion recidivism project report, "The Exclusionary Rules."

*criminal history points*, roughly 80 percent (79.5%) meet the definition of group A, group B, or group C.

Note that the impact of the definitions is cumulative. If group A is accepted as a first offender definition, the tabulation above shows that nearly 30 percent (29.8%) of all citizen offenders would be eligible for first offender status. However, if group B is accepted as a first offender definition, then group A (having no prior criminal history arrests) is also accepted by default. Thus the sum of offenders in either group A or group B accounts for 38.2 percent of all citizen offenders.

## D.  Characteristics of the Proposed First Offender Groups[15]

This section of the report highlights the uniqueness of offenders in the proposed first offender groups by describing their demographic, personal, social, instant offense, prior arrest history, conviction history, and sentencing characteristics. These comparisons serve as a prelude to the later description of recidivism rates, underscoring the distinctive nature of offenders who have only minimal experience with the criminal justice system.

Comparisons are made among the three groups themselves, between the three groups and CHC I offenders with only one criminal history point, and between the three groups and all remaining offenders with more than one criminal history point (and therefore in CHC II through CHC VI).[16]  The characteristics discussed include demographic and personal characteristics, instant offense and sentencing characteristics, and recidivism risk.

### 1.  Demographic, Personal, and Social Characteristics

Exhibits 1, 2, and 3 provide descriptions of a wide range of offender characteristics at the time of the guideline sentencing.

#### Gender

Exhibit 1 displays gender differences between group A, B, and C offenders and offenders with criminal history points.  In every column the greater percentage of offenders are male.

---

[15]Note that for completeness, Exhibit 1 through Exhibit 6 include a "remaining zeroes" group of citizen defendants. These offenders are those with zero criminal history points but not covered by the definitions of groups A, B, or C (i.e., they have non-minor prior convictions that do not receive any points due to guideline exclusionary rules). In total, this "left-over" zero group constitutes 10.2 percent of all citizen offenders.  The "remaining zeroes" group appears on the exhibits in this report to provide a comparison with the three potential first offender groups.

[16] CHC II through CHC VI are combined in the exhibits of this report.  However, the characteristics by the individual CHCs appear in a companion recidivism project report, "Background and Methodology of the U.S. Sentencing Commission's 2003 Recidivism Study."

However, the proportion of women reaches nearly 40 percent (37.4%) in first offender group A, decreasing to 26.1 percent in group B and 22.3 percent in group C  These are all substantially higher female proportions than for offenders with one criminal history point (14.4%) or all offenders in CHC II through CHC VI (9.1%).

<u>Race and Ethnicity</u>

White offenders comprise a higher proportion (between 66.1%, 58.9%, and 62.0%, respectively) of offenders in groups A, B, and C than offenders in CHC II through VI (50.0%). While the proportion of White offenders decreases with increasing prior criminal history, the reverse is true for Black offenders.  Offenders in CHC II through VI are more likely (41.8%) to be Black than are offenders in groups A, B, or C (22.8% , 29.5%, and 27.2%, respectively).  Group A has the highest percent of White offenders (66.1%) and the lowest percent of Black offenders (22.8%). Hispanic proportions are generally comparable across the columns of Exhibit 1.

<u>Age</u>

There is a positive association between age and the amount of prior criminal history. Offenders in group A are unique in their high concentration of older offenders: over 35 percent (35.4%) are age 41 years or older.  The proportion of offenders over 50 years of age is higher in groups A, B, and C (between 8.6% and 12.5%) than for offenders with one criminal history point (4.2%) or with more than one criminal history point (5.4%).

<u>Illicit Drug Use</u>

Exhibit 2 presents information on social behaviors by first offender group status.  In all cases, offenders in proposed first offender groups A, B, and C generally exhibit what are traditionally considered the most socially positive characteristics.  For instance, 45.6 percent of offenders in the higher CHCs used illicit drugs in the year prior to their instant offense.  For group A, B, and C offenders, however, illicit drug use in the year prior to their instant offense never exceeds 27.8 percent and is lowest for group A offenders (20.9%).

<u>Employment Status</u>

Exhibit 2 also shows that employment rates for groups A, B, and C are comparatively high (greater than 80%) as are employment rates for all offenders with zero or only one criminal history point at 79.5%.  In contrast, the employment rate for offenders in CHC II through CHC VI is lower at 67.6 percent.

## Marital Status

Offenders in all groups A, B, and C of Exhibit 2 are most likely to be legally married. This is true especially for group A, where almost half (48.0%) are married. In contrast, offenders in CHC II through CHC VI are most likely to have never married (40.2%).

## Mental Illness

Exhibit 3 shows that the percentages of mental illness do not substantially change between the first offender groups and offenders with more criminal history. Data from the PSRs indicate that reported mental illness rates are nearly constant across the columns of Exhibit 3, varying between 8.3 percent and 11.6 percent.

## Military Service

Rates of military service only vary slightly across the Exhibit 3 columns. Between 13.3 percent and 22.4 percent of offenders served in the military. Groups A, B, and C do not have the highest rates of military service.

## Educational Attainment

Offenders in groups A, B, and C are more likely to have a high school diploma, and even some college training, than are offenders with one or more criminal history points. Exhibit 3 indicates that over 70 percent of those in the first offender groups graduated from high school, with an additional approximate one-third of potential first offenders having at least some college education. These high school graduation rates are equivalent to those of the general U.S. population in 1990.[17] For offenders in CHC II through CHC VI, however, only somewhat more than half (55.8%) have at least a high school diploma, with 15.1 percent having at least some college-level training.

## Financial Dependents

Over half (52.4%) of offenders in CHC II through CHC VI do not have any financial dependents. Defendants in first offender groups A, B, and C are more likely to have dependents; but still, only between 38.4 percent to 43.6 percent of these low criminal history offenders have no dependents. The finding is consistent with higher rates of married offenders in groups A, B, and C.

---

[17]Bauman and Graf, 2000, report that 25 percent of the adult population age 25 and over in 1990 did not have a high school degree.

## 2. Instant Offense and Sentence Characteristics

Exhibits 4 and 5 examine the instant offenses of the group A, B, and C offenders and compare them to offenders with more extensive criminal histories.

<u>Primary Sentencing Guideline</u>

Drug trafficking offenses (§2D1.1) are the most common instant offense types for all columns in Exhibit 4. Group A is the least likely (26.1%) to have an instant offense under §2D1.1, followed by group C (34.6%). All other columns have at least 40 percent of instant offenses sentenced under drug trafficking guidelines.

Group A is unique in that a large proportion (almost half) of its instant offenses are sentenced under §2F1.1 fraud (25.3%) and §2B1.1 theft (23.2%). Group B has 23.5 percent of its instant offenses sentenced under these two guidelines, with group C having one third of its cases sentenced under these two guidelines. For offenders in CHC II through CHC VI, only 16.9 percent of instant offenses are under §2F1.1 fraud and §2B1.1 theft.

In contrast, almost one quarter of the instant offenses in CHC II through CHC VI are sentenced under §2K2.1 weapon offenses (14.3%) or §2B3.1 robbery (9.4%). In groups A, B, and C, these two guidelines account for less than 8 percent of sentencings. The proportion of weapon and robbery instant offenses is even smaller in group A, where they account for only 2.3 percent of sentencings.

<u>Dangerousness of Instant Offense Conduct</u>

During project data collection from the PSR, three types of dangerous behaviors were coded from the section on instant offense conduct. These behaviors include weapon presence during the offense, actual or threatened violence, and actual or threatened injury to a victim. Exhibit 4 shows the occurrence of any one of these behaviors. Groups A, B, and C are the least likely to have dangerousness conduct during the instant offense. The percentages range from a low of 9.3 percent for group A to a high of 18.4 percent for group B. Dangerous instant offense behavior is far more likely for offenders with criminal history points: 22.4 percent for offenders with one criminal history point, and 32.9 percent for offenders in CHC II through CHC VI.

<u>Culpability Criteria</u>

A central tenet behind the first offender philosophy is that first offenders are less culpable than other offenders. The bottom panel of Exhibit 4 displays four criteria generally associated with less culpable criminal conduct: no use of violence or weapons; no bodily injury of a victim; a minor

role or minimal participation in the instant offense, and acceptance of responsibility.[18]

As an offender meets more of the four of these criteria, the offender is considered less culpable and thus might be more deserving of a reduced sentence. The last line of data in Exhibit 4 shows the percentage of each column meeting all four of these criteria. Group A offenders, by far, are the least culpable offenders with 73.8 percent meeting all four criteria. In contrast, the most culpable offenders are in the higher CHCs: only 49.5 percent of offenders in CHC II through CHC VI meet all four criteria.

For groups B and C, and for offenders with one criminal history point, between 61.8 percent and 71.2 percent of offenders meet all four criteria.

Type of Sentence

Exhibit 5 illustrates that offenders in groups A, B, and C are less likely to receive a straight prison sentence than the offenders in CHC II through CHC VI (87.1%). Group A particularly stands out with less than half (41.2%) receiving a straight prison sentence. Consistently, group A offenders also stand out in that 30.3 percent received a probation only sentence. This is almost twice the rate at which group B and group C offenders receive probation only sentences, and six times higher than the 4.9 percent of offenders in CHC II through CHC VI. Both group A and C first offenders were much more likely than any other grouping of offenders to receive probation with an alternative sentence.

Length of Sentence

The length of imposed instant offense sentences are substantially higher for offenders in the higher CHCs. For all offenders in CHC II through CHC VI, a total of 24.2 percent have sentences between two and five years, with an additional 79.9 percent having sentences longer than five years. This is in sharp contrast to first offender groups A and C where sentences over five years are given to roughly 12 percent of offenders (12.8% and 11.4%, respectively) and sentences between two and five years are given to 11.5 percent of group A offenders and 18.2 percent of group C offenders.

Mitigating Role

Exhibit 5 illustrates that the guideline mitigating role adjustment to reduce the offense level was infrequently given: only 5.6 percent among all offenders in CHCs II through VI received this adjustment. First time offenders were overall, only slightly more likely to receive this adjustment.

---

[18]These general criteria reflect those currently existing in the guidelines under §5C1.2 with respect to certain drug trafficking offenders convicted under statutory minimum sentences. Here, however, their presence is measured for all instant offenses as a quantifiable proxy for lessened culpability.

### 3. Summary of Offender and Offense Characteristics

Offenders in the proposed first offender groupings A, B, and C are readily distinguishable from offenders with one or more criminal history points. The proposed first offender groups are more likely to be White and older. Substantially higher proportions of first offenders are female than for other offender groupings. They are more likely to have committed a fraud or larceny instant offense. They have less violent instant offenses, receive shorter sentences, and are less likely to go to prison. They are less likely to use illicit drugs, more likely to be employed, more likely to have a high school education (or beyond), and more likely to have financial dependents. Finally, offenders in groups A, B, and C, compared to other guideline offenders, have instant offenses that are less culpable and less dangerous.

These distinctions demonstrate that any implementation of a first offender provision will not only impact a large percentage of the federal caseload, but it will proportionally benefit offenders in certain demographic, social, personal, and offense categories. In addition, tabulations from the Commission's datafiles indicate that many federal guideline offenders eligible for a possible first offender reduction are also eligible for the §2D1.1 safety value adjustment and its often-overlapping eligibility criteria.

## E. Methodology

The sections below describe the recidivism research project and the definitions of recidivism used in the analysis.

### 1. The Recidivism Project

The recidivism study data are a stratified, random sample of 6,062 U.S. citizens[19] who were sentenced under the federal sentencing guidelines in fiscal year 1992.[20] Data on criminal behavior prior to the federal instant offense, as well as demographic and offender characteristics, were collected from the federal pre-sentence reports (PSRs) and other court documents submitted to the Sentencing Commission by U.S. district courts. Prison release date information was extracted from the SENTRY datafile of the Federal Bureau of Prisons in the U.S. Department of Justice. Recidivism information was obtained from the "RAP" sheet data of the Federal Bureau of Investigation's Criminal Justice Information Services Division office.

---

[19]Due to alien deportation following conviction for criminal behavior, it is difficult to measure recidivism of noncitizens convicted of federal crimes. A companion report in this recidivism project series, "Recidivism of Fiscal Year 1995 Noncitizen Federal Offenders," addresses citizenship issues in recidivism research.

[20]Details on the structure, methodology, and statistical techniques of the analysis are documented in the project's companion report, "Background and Methodology of the U.S. Sentencing Commission's 2003 Recidivism Study."

The sample of offenders used in the recidivism analysis represents the 28,519 U.S. citizen federal offenders in the Commission's 1992 fiscal year sentencing datafile where the following "two year window inclusion" conditions were met:

- a pre-sentence report (PSR) from a fiscal year 1992 sentencing was submitted to the Sentencing Commission;

- a "RAP" sheet was located on the FBI datafile; and

- for offenders receiving prison sentences, the release from prison occurred at least two years prior to June 1, 2001.

Given the project schedule for "RAP" sheet collection in October 2001, an offender must have been released from prison by June 1, 1999. Because the sampled offenders were sentenced in fiscal year 1992 (i.e., between October 1, 1991 and September 30, 1992), prison sentences as long as seven years are available for study.[21] The selection of these specific dates reflects the Commission's interest in the recidivism impact of mandatory minimum sentences. The effect of five year mandatory minimum sentences can be analyzed using the project's sampling strategy.

With the study's prison release deadline established as June 1, 2001, there were offenders in the sample who either were still in prison on this date, or had at this time been released prison for less than two years. For the entire recidivism sample, 14.7 percent of sample offenders are not in the analysis because they had not finished serving their prison time or did not have a two year "at risk" window of opportunity.[22] With respect to the first offender analysis, however, the focus is upon CHC I. A total of 91.3 percent of offenders in CHC I meet the two year window inclusion conditions and are in the analysis. This results in an unweighted sample with 1,389 offenders in CHC I, of whom 1,128 had zero criminal history points.

## 2. Definitions

Recidivism results are presented using two substantive definitions. The first, or "primary," definition includes the first of any one of the three following events during the offender's first two years back in the community:

- a re-conviction for a new offense;

---

[21]While the two year recidivism follow-up period limit was set at June 1, 2001, the actual collection of FBI "RAP" sheet data did not occur until October 2001. The four month delay between June and October assured that "RAP" sheet data would reflect all events prior to June 1. The intervening months accounted for administrative processing time to update fingerprint card information on the FBI datafile, thus minimizing any potential bias due to the states' differential schedules for reporting data to the FBI.

[22]This figure represents the sum of the sample offenders who by June 1, 2001, were still in prison (8.9%), who had died (0.4%), or had not been released for at least two years (5.4%).

- a re-arrest with no conviction disposition information available on the post-release criminal history record;[23] or

- a supervision revocation (probation or post prison supervision).

The second "re-conviction only" recidivism definition limits recidivism to the first re-conviction during the two year follow-up period. It uses only the first of the three events in the primary recidivism measure listed above.

The use of two different recidivism definitions addresses the state of post-release criminal behavior records. The recidivism literature recognizes that the FBI offender "RAP" sheets are the most accurate and readily available data source for repeat criminal behavior. However, "RAP" sheets can contain errors or partial information. For example, "RAP" sheets only contain information on offenses for which offender fingerprints were obtained. Additionally, depending on the reporting policies and practices of local jurisdictions, arrest dispositions may not always be transferred to the FBI for inclusion on "RAP" sheets. "RAP" sheets will underreport actual criminal behavior, and will underreport convictions resulting from arrests. For this reason, recidivism studies (including all of the Commission's previous recidivism study reports) commonly cite recidivism rates separately for what is termed here the "primary" and "re-conviction" definitions. However, these same studies also argue that, compared to the "re-conviction" definition, the "primary" recidivism definition is a more reliable and valid measure for the probability of actual re-offending because of its inclusiveness and its high association with actual re-offending.[24] Also, because these two definitions are highly correlated, the research findings resulting from the two definitions are highly related and lead to nearly identical conclusions, although the magnitude of their comparative findings differs.

Data cited throughout this paper are weighted to represent the entire comparable population of fiscal year 1992 U.S. citizen offenders sentenced under the federal guidelines.

## F. Recidivism Rates for the Proposed First Offender Groups

Exhibit 6 shows two-year recidivism rates for the various offender groupings. All offenders with zero criminal history points have a primary recidivism rate of 11.7 percent.[25] This zero point offender recidivism rate is substantially lower than the recidivism rates for offenders with only one criminal history point (22.6%),[26] or for offenders with

---

[23]Disposition information was obtained from the FBI's criminal history record ("RAP" sheet).

[24]Spohn and Holleran, 2002. The methodological arguments supporting various empirical definitions of recidivism are contained in the companion project report, "Background and Methodology of the U.S. Sentencing Commission's 2003 Recidivism Study."

[25]The re-conviction recidivism rate for zero point offenders is 3.5 percent.

[26]The re-conviction recidivism rate for one point offenders is 5.5 percent.

two or more points (36.5%)[27] combined in the CHC II through CHC VI column.

Among the potential first offender groups, group A has the lowest primary recidivism rate at 6.8 percent,[28] followed by offender group C with a rate of 8.8 percent.[29] Offenders in group B have a recidivism rate of 17.2 percent,[30] which is more than twice the rate of group A and nearly twice the rate for group C. Even with the comparatively higher recidivism rate, group B's rate is still several percentage points lower than offenders in the remaining zeroes group (21.7%).[31]

Its low recidivism rate makes first offender group A stand out. Recall that group A offenders have no prior criminal events, not even a prior arrest. Compared to group B, which has prior arrests but no convictions, and a higher recidivism rate, it appears that prior arrests are predictive of recidivism for offenders with minimal prior criminal experience.

## G. Pre-Instant-Offense Criminal Histories

This report section highlights differences in the prior criminal histories of groups A, B, and C and the link between arrests and recidivism. Following from the analysis above, it appears that arrests themselves, independent from convictions, predict risk of recidivism. This relationship is supported in a comparison of group A and group B. Neither group has prior convictions, but offenders in group A with no prior arrests have dramatically lower recidivism rates (6.8%) than offenders in group B with prior arrests but no convictions (17.2%). Several exhibits focus on how recidivism rates vary by the number, types, and characteristics of prior arrests.

Exhibit 7 shows the distribution of prior arrests for the proposed first offender groups and the comparison groups. The data for first offender group A are consistent with the group's definition: offenders in group A have no prior arrests. For group B first offenders, 58.6 percent have one prior arrest, 22.8 percent have two prior arrests, and 18.6 percent have three or more prior arrests. The group B arrest history is more consequential than the history of offenders in group C. For group C,[32] only a small proportion have more than three prior arrests. Those in Group B have higher levels of contact with the criminal justice system, with nearly one out of ten (10.3%) of group B offenders having four or more arrests.

---

[27]The re-conviction recidivism rate for two or more point offenders is 10.3 percent.

[28]The re-conviction recidivism rate for group A offenders is 2.5 percent.

[29]The re-conviction recidivism rate for group C offenders is 2.9 percent.

[30]The re-conviction recidivism rate for group B offenders is 5.3 percent.

[31]The re-conviction recidivism rate for Remaining Zero group offenders is 5.2 percent.

[32] All offenders in group C have at least one conviction for a minor prior offense under §4A1.2(c)(2). The arrests appearing in Exhibit 7 for group C involve only arrests not resulting in a conviction.

Information on the shape of the relationship between number of prior arrests and recidivism appears in Exhibit 8. The first offender groups A and B represent all guideline sentenced federal offenders who have never had a prior conviction. The exhibit illustrates that recidivism rates increase with the number of prior arrests. Those with only one prior arrest (and no convictions) have a recidivism rate nearly twice that of offenders with no prior arrests (13.2% versus 6.8%, respectively). Those with two or more prior arrests (and no convictions) have a recidivism rate nearly double that of those with only one prior arrest (13.2% versus 23.2%, respectively). Clearly, arrests without convictions are predictive of re-offending behavior.

An additional inquiry focuses on the types of offenses charged for past arrests that did not result in a conviction. Exhibit 9[33] again reflects the fact that first offender group A has no prior arrests. For group B first offenders, arrests without convictions are concentrated in drug trafficking (11.9%), drug possession (9.7%), assault (8.2%), fraud (8.6%), and theft (10.2%) offenses. Unfortunately, at this level of detail, the sample size for group C first offenders does not support comparisons. However, patterns across all columns of Exhibit 9 are comparable. For the different groupings of offenders in CHC I, the distribution of nonconviction arrests is similar.

These data suggest that the types of non-conviction arrests themselves do not predict recidivism. However, the reasons why these arrests did not result in convictions do show meaningful differences. Exhibit 10[34] addresses these findings. The comparison involves groups B and C because group A has no prior arrests.

For group B offenders, prior arrests are dismissed or otherwise not prosecuted less than half of the time (45.4%). In contrast, more than a quarter (26.5%) of the time the disposition of the prior arrest is pending and for another 15.7 percent of arrests, the offender is under warrant for the prior arrest, with the sum of these two categories over 40 percent.[35] Arrests either pending or under warrant will be either prosecuted or not, and when prosecuted will either result in a conviction or not. Consequently, for some portion of the pending or warranted arrests, the offender will end up with a subsequent conviction. This means that in four out of every ten prior arrests, the disposition of the group B prior arrest may result in a pre-instant offense conviction.

The situation is quite different for group C offenders, where the most common reason that a prior arrest did not receive points is that the arrest charges were dismissed. Almost 70 percent (69.8%) of arrest charges of group C offenders are dismissed or otherwise not prosecuted.[36] There is essentially no chance that any of these prior dismissals will result in a subsequent conviction.

---

[33]This information was not collected for CHC II through CHC VI and thus cannot not appear in the exhibit.

[34]This information was not collected for CHC II through CHC VI and thus cannot not appear in the exhibit.

[35]The sum of 26.5 percent and 15.7 percent is 42.2 percent.

[36]The small sample size of the group C category constrains confident citing of the proportions for most of the reasons why points were not assigned to prior offenses. However, the 69.8 percent proportion for dismissed prior arrests can be used.

The differences in group B and group C reasons for non-conviction prior arrests might be a factor in the groups' differences in recidivism rates. For group C, the prior arrests are usually dropped and not prosecuted. For group B, however, the high level of pending or warranted prior arrests may indicate latent conviction events, spared from receiving criminal history points only because of the timing of the instant offense sentencing. If this were the case, it suggests that some group B offenders may have recidivism behavioral tendencies in common with federal offenders who actually experience one, or more, prior convictions and receive the associated criminal history points. Not only is this explanation consistent with the higher recidivism rates of group B offenders, but in addition the data from the last line of Exhibit 10 also suggest that the prior arrests of group B offenders indicate greater offender culpability. A total of 16.8 percent of group B nonconviction arrests involve weapons, injury, or violence, the highest percentage among groups in CHC I.

In summary, first offender group A has the lowest recidivism rate and the least culpable criminal history. Focusing on groups B and C, however, the data reveal an interesting twist. The recidivism rates in Exhibit 6, combined with prior arrest characteristics depicted in Exhibits 7 through 10, suggest that group B offenders may have greater prior involvement, and possibly more culpable involvement, with the criminal justice system than is represented by their possession of zero criminal history points. Although group C first offenders have prior convictions (albeit for minor traffic and public order offenses which are excluded from receiving criminal history points), their prior arrest history and recidivism rates indicate that they better reflect the reduced culpability motivation underlying a first offender philosophy than do offenders in group B.

For prior arrests among first offenders, the following findings emerge. For group B first offenders there is a large representation (40.0%) of drug trafficking, drug possession, violence, and larceny offenses. For group C first offenders relatively few (18.7%) of these prior arrests were for drug trafficking, drug possession, violence, and larceny offenses. Less than two percent (1.4%) of these prior nonconviction arrests resulted in a not guilty disposition. The number of prior arrests among those with no prior convictions appears to be directly related to recidivism risk.

These results may go some way in helping to explain why offenders with prior arrests but no prior convictions, have a recidivism rate nearly three times as large as offenders with no prior arrests. The prior arrests of group B offenders suggest a correlation with serious criminal conduct prior to the sentencing of their federal instant offenses. These arrests were often for more serious offenses and typically had the charges dismissed, pending, or under warrant for almost nine out of every ten (87.6%) arrests. These data suggest that at least for some of the prior arrests for these offenders, the prior charges relate to actual prior offending, and thus generate their observed higher recidivism rates.

## H. Conclusion

This report examines recidivism risk for three plausible first offender groupings consistent with historical Commission definitions of possible first offenders. The three first offender groups all come from offenders with zero criminal history points, and are defined as follows: group A contains offenders with no prior arrests; group B contains offenders with prior arrests, but no prior convictions; and group C contains offenders with only prior

convictions that are to never count towards criminal history. Among these groups the lowest recidivism rate is for group A with a rate of 6.8 percent. Group B has a recidivism rate of 17.2 percent. Group C has a recidivism rate of 8.8 percent.

Comparing recidivism rates for the three groups leads to the following conclusions regarding a first offender definition. Group B offenders are the most problematic as candidates for first offender status. While group B offenders have no prior convictions, it appears that the absence of prior convictions is often due to prosecutorial declinations, arrests that were pending prosecution at the time of sentencing for the instant offense, or arrests with issued outstanding warrants. Moreover, group B, with its recidivism rate of 17.2 percent, has a substantially greater risk for future offending compared to groups A and C.

Group C offenders, having been previously convicted of minor traffic or public order crimes, have only limited contact with the criminal justice system prior to their instant offense. Also, with a recidivism rate of 8.8 percent, the overwhelming majority of group C offenders – almost nine out of ten – are not likely to recidivate.

From both culpability and recidivism risk perspectives, group A offenders, with no prior arrests, most strongly meet the conceptual definition of the first offender category. Offenders in group A have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate of 6.8 percent, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.

The analysis delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all. Regardless of what definition is adopted, however, there are a myriad of legal and policy decisions to make. For example, a "no prior arrest" first offender definition raises issues about the acceptability of using arrest data – often with incomplete disposition information – and the accuracy of prior history information sources. A "no prior conviction" definition raises issues about how to count prior convictions that are otherwise excluded from the criminal history computation due to juvenile, tribal, foreign, or decay provisions. Other general issues involve the first offender definitions and their empirical associations with offender characteristics: certain first offender definitions will disproportionally impact demographic groups (such as women, minorities, or perhaps, noncitizens) or certain instant offense categories (such as fraud and larceny offenses). Further, an important policy decision is required to address any overlap between first offender sentencing provisions and safety valve provisions for drug traffickers under guideline §2D1.1.

Finally, the adoption of some first offender definitions may require the court to collect information that is not currently included in the criminal history computation and thus may not be consistently reported in PSRs. Specifically, this information may involve data on prior arrests

without dispositions and prior convictions that do not receive points. If a first offender definition requires that PSRs collect this information, a standardized protocol may be needed to ensure that facts are collected completely and accurately. For this report, a small comparison determined that currently arrest data from PSRs are more complete than arrest data from FBI "RAP" sheets, but it is not known what level of new information would be additionally needed on the PSRs.

This report is the first step in an empirical discussion regarding a first offender provision. As with prior Commission efforts, first offender definitions can be developed and their sentencing outcomes can be estimated. It is only now, however, with the Commission's recidivism data, that the analysis will include the impact of alternative first offender provisions on the predictive power of the guidelines' criminal history measures.



# References

Bauman, Kurt J. and Nikki L. Graf
  2000    Educational Attainment.  U.S. Census Bureau.

Delong, Elizabeth R., David M. Delong, and Daniel L. Clarke-Pearson
  1988    Comparing  the  areas  under  two  or  more correlated receiver operating curves: A
          nonparametric approach.  Biometrics 44:837-845.

Hosmer, David W. Jr. and Stanley Lemeshow
  1999    Applied Survival Analysis: Regression Modeling of Time to Event Data.  New York:
          Wiley.

Klein, John P. and Malvin L. Moeschberger
  1997    Survival Analysis: Techniques for Censored and Truncated Data.  New York: Springer.

Maltz, Michael D.
  1984    Recidivism.  Orlando, FL.: Academic Press.

Mariano, Marianne
  2001    Summary of Past Reports on Criminal History Categories "0" and "VII."  United States
          Sentencing Commission, Memorandum: June 15, 2001.

O'Neill, Michael E.
  2001    Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in The
          Federal System.  Boston College Law Review  42:291-348.

Ricca, Caryl
  1997    Simplification of Chapter Four: Comments from the Probation Officers Advisory Group
          to the U.S. Sentencing Commission.  Federal Sentencing Reporter 9(4):209-212.

Schmidt, Peter and Ann Dryden Witte
  1988    Predicting Recidivism Using Survival Models.  New York: Springer-Verlag.

Sphon, Cassia and David Holleran
  2002    The Effect of Imprisonment on Recidivism Rates of Felony Offenders: A Focus on Drug
          Offenders.  Criminology 40:329-357.

Swets, John A., Robyn M. Dawes, and John Monahan
    2000    Better Decisions Through Science.  Scientific American 283(4):82-87.

United States Sentencing Commission
    1989    Memorandum from Working Group on Criminal History to Phyllis Newton concerning the Proposed Amendments to Criminal History Chapter, December 20. Washington, D.C.: United States Sentencing Commission.

United States Sentencing Commission
    1990    Criminal History Working Group: Discussion Concerning Categories "0" and "VII," November 20. Washington, D.C.: United States Sentencing Commission.

United States Sentencing Commission
    1991a    Criminal History Working Group Report: Category 0, Category VII, Career Offender, October 17.  Washington, D.C.: United States Sentencing Commission.

United States Sentencing Commission
    1991b    Preliminary Report to the Commission: Staff Working Group on Alternatives, October 23.  Washington, D.C.: United States Sentencing Commission.

United States Sentencing Commission
    1997    Simplification Draft Paper on Chapter Four.  Washington, D.C.: United States Sentencing Commission.

United States Sentencing Commission
    2001a    Federal Sentencing Register Notice of Action, BAC2201-40/2211-01, listed under tentative priority (13).  http://ussc.gov/FEDREG/fedr07031.htm.

United States Sentencing Commission
    2001b    Sourcebook of Federal Sentencing Statistics.  Washington, D.C.: United States Sentencing Commission.

United States Sentencing Commission
    2004    Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines.  Release 1 of the Research Series on the Recidivism of Federal Guideline Offenders.  Washington, D.C.:  United States Sentencing Commission.

Exhibit 1
## Demographic Characteristics of Offenders, by Criminal History Category and Criminal History Points
## With Details for Zero Point Offender Categories
Recidivism Study 2003

| Demographic Characteristics | CRIMINAL HISTORY CATEGORY I | | | | | | | | | | ONE POINT OFFENDERS | | CATEGORIES II – VI — TWO OR MORE POINT OFFENDERS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ZERO POINT OFFENDERS | | | | | | | | | | | | | |
| | Total Zeroes | | Group A no arrests | | Group B no convictions | | Group C never-count conv[1] | | Remaining Zeroes | | | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % | N | % |
| TOTAL | 14,845 | 100.0 | 8,854 | 100.0 | 2,499 | 100.0 | 460 | 100.0 | 3,032 | 100.0 | 3,231 | 100.0 | 11,672 | 100.0 |
| **Gender** | | | | | | | | | | | | | | |
| Female | 4,459 | 30.0 | 3,308 | 37.4 | 653 | 26.1 | *103‡* | *22.3* | 395 | 13.0 | 463 | 14.4 | 1,057 | 9.1 |
| Male | 10,386 | 70.0 | 5,546 | 62.6 | 1,846 | 73.9 | 357 | 77.7 | 2,637 | 87.0 | 2,758 | 85.6 | 10,615 | 90.9 |
| **Race/Ethnicity** | | | | | | | | | | | | | | |
| White | 9,365 | 63.5 | 5,849 | 66.1 | 1,471 | 58.9 | 270 | 62.0 | 1,775 | 59.8 | 1,930 | 61.0 | 5,773 | 50.0 |
| Black | 3,798 | 25.7 | 2,016 | 22.8 | 738 | 29.5 | 119 | 27.2 | 926 | 31.2 | 959 | 30.3 | 4,838 | 41.8 |
| Hispanic | 1,173 | 8.0 | 756 | 8.5 | 237 | 9.5 | *23‡* | *5.2* | 157 | 5.3 | 195 | 6.2 | 703 | 6.1 |
| Other[2] | 420 | 2.8 | 233 | 2.6 | *52‡* | *2.1* | *24‡* | *5.6* | *110‡* | *3.7* | *78‡* | *2.5* | 239 | 2.1 |
| **Age** | | | | | | | | | | | | | | |
| Under 21 | 1,056 | 7.1 | 644 | 7.3 | 218 | 8.7 | *21‡* | *4.6* | 173 | 5.7 | 295 | 9.1 | 720 | 6.2 |
| 21 – 25 | 2,183 | 14.7 | 1,223 | 13.8 | 516 | 20.6 | *80‡* | *17.4* | 364 | 12.0 | 443 | 13.7 | 2,173 | 18.6 |
| 26 – 30 | 2,294 | 15.5 | 1,379 | 15.6 | 469 | 18.8 | *68‡* | *14.8* | 379 | 12.5 | 793 | 24.6 | 2,472 | 21.2 |
| 31 – 35 | 2,252 | 15.2 | 1,234 | 13.9 | 425 | 17.0 | *86‡* | *18.6* | 507 | 16.7 | 530 | 16.4 | 2,358 | 20.2 |
| 36 – 40 | 2,103 | 14.2 | 1,243 | 14.0 | 299 | 12.0 | *92‡* | *20.0* | 469 | 15.4 | 372 | 11.5 | 1,641 | 14.0 |
| 41 – 50 | 2,944 | 19.8 | 1,777 | 20.1 | 358 | 14.3 | *56‡* | *12.1* | 753 | 24.9 | 662 | 20.5 | 1,681 | 14.4 |
| Over 50 | 2,012 | 13.6 | 1,354 | 15.3 | 214 | 8.6 | *57‡* | *12.5* | 387 | 12.8 | 136 | 4.2 | 627 | 5.4 |

[1] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).
[2] "Other" race category includes Native Americans and Asians.
‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.
SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

Exhibit 2
## Social and Personal Characteristics of Offenders, by Criminal History Category and Criminal History Points
## With Details for Zero Point Offender Categories
Recidivism Study 2003

| | CRIMINAL HISTORY CATEGORY I | | | | | | | | | | | | | CATEGORIES II – VI | |
| | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | | TWO OR MORE POINT OFFENDERS | |
| Social/ Personal Characteristics | Total Zeroes | | Group A *no arrests* | | Group B *no convictions* | | Group C *never-count conv*[1] | | Remaining Zeroes | | | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 14,845 | 100.0 | 8,854 | 100.0 | 2,499 | 100.0 | 460 | 100.0 | 3,032 | 100.0 | 3,231 | 100.0 | 11,672 | 100.0 |
| **Illicit Drug Use**[2] | | | | | | | | | | | | | | |
| No Illicit Drug Use | 11,072 | 74.6 | 7,002 | 79.1 | 1,804 | 72.2 | 359 | 78.0 | 1,907 | 62.9 | 2,184 | 67.6 | 6,345 | 54.4 |
| Illicit Drug Use | 3,773 | 25.4 | 1,852 | 20.9 | 695 | 27.8 | *101‡* | *22.0* | 1,125 | 37.1 | 1,046 | 32.4 | 5,325 | 45.6 |
| **Employment Status**[3] | | | | | | | | | | | | | | |
| Unemployed | 2,301 | 15.5 | 1,175 | 13.3 | 461 | 18.4 | *44‡* | *9.5* | 622 | 20.5 | 447 | 13.8 | 3,778 | 32.4 |
| Employed | 12,544 | 84.5 | 7,679 | 86.7 | 2,038 | 81.6 | 416 | 90.5 | 2,411 | 79.5 | 2,784 | 86.2 | 7,894 | 67.6 |
| **Marital Status** | | | | | | | | | | | | | | |
| Never Married | 4,004 | 27.0 | 2,131 | 24.1 | 842 | 33.7 | 131 | 28.5 | 900 | 29.7 | 896 | 27.7 | 4,688 | 40.2 |
| Legal Marriage | 6,509 | 43.8 | 4,253 | 48.0 | 848 | 33.9 | 204 | 44.3 | 1,204 | 39.7 | 1,277 | 39.5 | 2,694 | 23.1 |
| Divorced | 1,975 | 13.3 | 1,079 | 12.2 | 309 | 12.4 | *56‡* | *12.1* | 532 | 17.6 | 380 | 11.8 | 1,897 | 16.2 |
| Other[4] | 2,357 | 15.9 | 1,391 | 15.7 | 501 | 20.0 | *70‡* | *15.1* | 396 | 13.1 | 677 | 21.0 | 2,393 | 20.5 |

[1] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).
[2] Illicit drug use during the year prior to the instant offense. Missing values counted as "No"illicit drug use.
[3] Employment status during the year prior to the instant offense. "Employed" includes alternative forms of employment and "Unemployed" includes missing values.
[4] "Other" marital status includes "Co-habitating," "Widowed," and "Separated."
‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.
SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

Exhibit 3

**Social and Personal Characteristics of Offenders, by Criminal History Category and Criminal History Points**
**With Details for Zero Point Offender Categories**
Recidivism Study 2003

| Social/ Personal Characteristics | CRIMINAL HISTORY CATEGORY I | | | | | | | | | | | | CATEGORIES II – VI | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | | TWO OR MORE POINT OFFENDERS | |
| | Total Zeroes | | Group A no arrests | | Group B no convictions | | Group C never-count conv[1] | | Remaining Zeroes | | | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % | N | % |
| TOTAL | 14,845 | 100.0 | 8,854 | 100.0 | 2,499 | 100.0 | 460 | 100.0 | 3,032 | 100.0 | 3,231 | 100.0 | 11,672 | 100.0 |
| **Mental Illness[2]** | | | | | | | | | | | | | | |
| No | 13,170 | 90.4 | 7,874 | 90.5 | 2,201 | 90.0 | 416 | 90.5 | 2,679 | 90.3 | 2,931 | 91.7 | 10,087 | 88.4 |
| Yes | 1,407 | 9.7 | 832 | 9.6 | 244 | 10.0 | 44‡ | 9.5 | 288 | 9.7 | 266 | 8.3 | 1,327 | 11.6 |
| **Prior Military Service** | | | | | | | | | | | | | | |
| No | 12,326 | 83.0 | 7,437 | 84.0 | 2,166 | 86.7 | 371 | 80.7 | 2,352 | 77.6 | 2,666 | 82.5 | 10,053 | 86.1 |
| Yes | 2,520 | 17.0 | 1,417 | 16.0 | 333 | 13.3 | 89‡ | 19.3 | 680 | 22.4 | 564 | 17.5 | 1,620 | 13.9 |
| **Educational Attainment[3]** | | | | | | | | | | | | | | |
| < Than High School | 3,872 | 26.2 | 1,961 | 22.2 | 703 | 28.2 | 70‡ | 15.1 | 1,139 | 37.8 | 1,066 | 33.0 | 5,122 | 44.2 |
| High School | 5,820 | 39.4 | 3,541 | 40.1 | 987 | 39.7 | 230 | 50.1 | 1,062 | 35.3 | 1,138 | 35.2 | 4,355 | 37.6 |
| Some College | 3,396 | 23.0 | 2,122 | 24.1 | 597 | 24.0 | 103 | 22.3 | 575 | 19.1 | 835 | 25.9 | 1,758 | 15.1 |
| College Graduate | 1,691 | 11.4 | 1,196 | 13.6 | 203 | 8.1 | 57‡ | 12.5 | 235 | 7.8 | 192 | 5.9 | 362 | 3.1 |
| **Financial Dependants[4]** | | | | | | | | | | | | | | |
| 0 | 5,729 | 40.6 | 3,261 | 38.4 | 996 | 43.0 | 200 | 43.6 | 1,272 | 44.9 | 1,336 | 43.2 | 5,599 | 52.4 |
| 01 – 04 | 7,827 | 55.5 | 4900 | 57.7 | 1,247 | 53.8 | 249 | 54.2 | 1,431 | 50.5 | 1,647 | 53.3 | 4,642 | 43.5 |
| 05 – 10 | 544 | 3.9 | 329 | 3.9 | 75‡ | 3.2 | 10‡ | 2.3 | 129 | 4.6 | 110‡ | 3.5 | 442 | 4.1 |

[1] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).
[2] Mental Illness is defined as any mention of a mental illness regardless of whether or not the claim was verified by a doctor. Alcohol and illicit drug abuse/addiction were excluded.
[3] Educational Attainment at the time of the instant offense.
[4] Number of individuals to whom the offender provided financial support during the year prior to the instant offense.
‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.
SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

Exhibit 4
**Instant Offense Characteristics for Offenders, by Criminal History Category and Criminal History Points**
**With Details for Zero Point Offender Categories**
Recidivism Study 2003

| Instant Offense Characteristics | Total Zeroes N | % | Group A no arrests N | % | Group B no convictions N | % | Group C never-count conv[1] N | % | Remaining Zeroes N | % | ONE POINT OFFENDERS N | % | TWO OR MORE POINT OFFENDERS N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL** | 14,845 | 100.0 | 8,854 | 100.0 | 2,499 | 100.0 | 460 | 100.0 | 3,032 | 100.0 | 3,231 | 100.0 | 11,672 | 100.0 |
| **Primary Sentencing Guideline** | | | | | | | | | | | | | | |
| §2D1.1 *(drug traf.)* | 4,924 | 33.2 | 2,311 | 26.1 | 1,228 | 49.1 | 158 | 34.6 | 1,226 | 40.5 | 1,413 | 43.7 | 4,761 | 40.8 |
| §2F1.1 *(fraud)* | 3,144 | 21.2 | 2,241 | 25.3 | 370 | 14.8 | 68‡ | 14.8 | 465 | 15.3 | 486 | 15.0 | 1,326 | 11.4 |
| §2B1.1 *(theft)* | 2,578 | 17.4 | 2,049 | 23.2 | 217 | 8.7 | 82‡ | 18.2 | 230 | 7.6 | 426 | 13.2 | 640 | 5.5 |
| §2K2.1 *(weapon)* | 256 | 1.7 | 87‡ | 1.0 | 57‡ | 2.3 | 23‡ | 4.9 | 89‡ | 2.9 | 122 | 3.8 | 1,667 | 14.3 |
| §2B3.1 *(robbery)* | 316 | 2.1 | 115 | 1.3 | 84‡ | 3.4 | 12‡ | 2.6 | 105‡ | 3.5 | 94‡ | 2.9 | 1,094 | 9.4 |
| **Dangerous Instant Offense[2]** | | | | | | | | | | | | | | |
| Yes | 1,941 | 13.1 | 824 | 9.3 | 461 | 18.4 | 45‡ | 9.8 | 611 | 20.2 | 723 | 22.4 | 3,836 | 32.9 |
| **Culpability Criteria[3]** | | | | | | | | | | | | | | |
| 1. No Viol. or Weap. | 12,925 | 87.1 | 8,051 | 90.9 | 2,028 | 81.1 | 404 | 87.9 | 2,442 | 80.5 | 2,552 | 79.0 | 7,908 | 67.8 |
| 2. No Bodily Injury | 14,749 | 99.3 | 8,833 | 99.8 | 2,457 | 98.3 | 460 | 100.0 | 2,999 | 98.9 | 3,210 | 99.4 | 11,498 | 98.4 |
| 3. Mitigating Role | 13,655 | 92.0 | 8,119 | 91.7 | 2,298 | 92.0 | 458 | 99.6 | 2,779 | 91.6 | 2,918 | 90.3 | 10,683 | 91.5 |
| 4. Acceptance of Resp. | 12,373 | 83.3 | 7,562 | 85.4 | 2,050 | 82.0 | 374 | 81.4 | 2,386 | 78.7 | 2,644 | 81.8 | 8,819 | 75.6 |
| *Meet All Four Above Culpability Criteria* | 10,356 | 69.8 | 6,532 | 73.8 | 1,623 | 64.9 | 327 | 71.2 | 1,873 | 61.8 | 2,000 | 61.9 | 5,782 | 49.5 |

Column group headers: **CRIMINAL HISTORY CATEGORY I** (ZERO POINT OFFENDERS: Total Zeroes, Group A, Group B, Group C, Remaining Zeroes; ONE POINT OFFENDERS) and **CATEGORIES II – VI** (TWO OR MORE POINT OFFENDERS).

[1] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).

[2] Dangerousness indicates whether or not an offender during the Commission of their instant offense either threatened or caused actual violence or injury and or a weapon was involved. Missing values are counted as "No" dangerousness present.

[3] §5C1.2 - Limitation on Applicability of Statutory Minimum Sentences in Certain Cases. Examines Safety Valve eligibility criteria - §5C1.2(a)(2), §5C1.2(a)(3), §5C1.2(a)(4), §5C1.2(a)(5), excluding §5C1.2(a) and §5C1.2(a)(1) exclusions.

‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.

SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

Exhibit 5
**Sentence Characteristics for Offenders, by Criminal History Category and Criminal History Points**
**With Details for Zero Point Offender Categories**
Recidivism Study 2003

| | CRIMINAL HISTORY CATEGORY I | | | | | | | | | | ONE POINT OFFENDERS | | CATEGORIES II – VI / TWO OR MORE POINT OFFENDERS | |
| | ZERO POINT OFFENDERS | | | | | | | | | | | | | |
| Sentence Characteristics | Total Zeroes | | Group A no arrests | | Group B no convictions | | Group C never-count conv[1] | | Remaining Zeroes | | | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % | N | % |
| **TOTAL** | 14,845 | 100.0 | 8,854 | 100.0 | 2,499 | 100.0 | 460 | 100.0 | 3,032 | 100.0 | 3,231 | 100.0 | 11,672 | 100.0 |
| **Type of Sentence[2]** | | | | | | | | | | | | | | |
| Fine Only | 134 | 0.9 | 121 | 1.4 | *0‡* | *0.0* | *0‡* | *0.0* | *12‡* | *0.4* | *12‡* | *0.4* | *3‡* | *0.0* |
| Probation Only | 3,646 | 24.6 | 2,685 | 30.3 | 364 | 14.6 | *87‡* | *18.9* | 510 | 16.8 | 562 | 17.4 | 572 | 4.9 |
| Probation +Alternatives | 2,768 | 18.7 | 1,894 | 21.4 | 340 | 13.7 | 121 | 26.4 | 413 | 13.6 | 486 | 15.0 | 542 | 4.7 |
| Prison + Alternatives | 818 | 5.5 | 503 | 5.7 | 126 | 5.1 | *10‡* | *2.3* | 178 | 5.9 | 168 | 5.2 | 392 | 3.4 |
| Prison | 7,467 | 50.3 | 3,650 | 41.2 | 1,657 | 66.6 | 241 | 52.4 | 1,919 | 63.3 | 2,003 | 62.0 | 10,163 | 87.1 |
| **Length of Sentence[3]** | | | | | | | | | | | | | | |
| 0 | 6,560 | 44.4 | 4,701 | 53.3 | 716 | 28.8 | 208 | 45.3 | 935 | 31.0 | 1,060 | 33.0 | 1,117 | 9.6 |
| 01 – 05 | 1,059 | 7.2 | 640 | 7.3 | 157 | 6.3 | *31‡* | *6.8* | 231 | 7.7 | 273 | 8.5 | 421 | 3.6 |
| 06 – 11 | 797 | 5.4 | 419 | 4.8 | 136 | 5.5 | *21‡* | *4.6* | 220 | 7.3 | 241 | 7.5 | 800 | 6.9 |
| 12 – 23 | 1,678 | 11.3 | 912 | 10.3 | 315 | 12.6 | *63‡* | *13.7* | 388 | 12.9 | 294 | 9.2 | 1,770 | 15.2 |
| 24 – 59 | 2,014 | 13.6 | 1,017 | 11.5 | 503 | 20.2 | *84‡* | *18.2* | 409 | 13.6 | 461 | 14.4 | 2,809 | 24.2 |
| 60 or More | 2,674 | 18.1 | 1,133 | 12.8 | 661 | 26.6 | *52‡* | *11.4* | 828 | 27.5 | 881 | 27.4 | 4,704 | 40.5 |
| **Points for Mitigating Role** | | | | | | | | | | | | | | |
| 0 points | 13,537 | 91.6 | 8,060 | 91.4 | 2,213 | 89.4 | 427 | 95.0 | 2,837 | 93.6 | 2,902 | 90.1 | 10,936 | 94.5 |
| -2 points | 879 | 6.0 | 527 | 6.0 | 199 | 8.0 | *23‡* | *5.0* | 131 | 4.3 | 239 | 7.4 | 482 | 4.2 |
| -3 points | *31‡* | *0.2* | *10‡* | *0.1* | *10‡* | *0.4* | *0‡* | *0.0* | *10‡* | *0.4* | *10‡* | *0.3* | 46 | 0.4 |
| -4 points | 330 | 2.2 | 221 | 2.5 | *54‡* | *2.2* | *0‡* | *0.0* | *54‡* | *1.8* | *70‡* | *2.2* | 110 | 1.0 |

[1] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).
[2] The type of sentenced given for the offender's instant offense.
[3] The sentence imposed for the offender's instant offense, presented in months.
‡ Indicates fewer than 10 sample subjects.  Findings may not be statistically significant.
SOURCE:  U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data.  Missing data are excluded, unless specified.

Exhibit 6

**Recidivism Rates, by Criminal History Category and Criminal History Points**
**With Details for Zero Point Offender Categories**
Recidivism Study 2003

| | CRIMINAL HISTORY CATEGORY I | | | | | | | | | | | CATEGORIES II – VI | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | | TWO OR MORE POINT OFFENDERS | |
| | Total Zeroes | | Group A *no arrests* | | Group B *no convictions* | | Group C *never-count conv²* | | Remaining Zeroes | | | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % | N | % |
| **TOTAL¹** | 12,546 | 100.0 | 7,448 | 100.0 | 2,089 | 100.0 | 416 | 100.0 | 2,592 | 100.0 | 2,882 | 100.0 | 8,895 | 100.0 |
| **Primary Recidivism Definition³** | | | | | | | | | | | | | | |
| Did Recidivate | 1,465 | 11.7 | 508 | 6.8 | 359 | 17.2 | *36‡* | *8.8* | 561 | 21.7 | 650 | 22.6 | 3,250 | 36.5 |
| Did *NOT* Recidivate | 11,081 | 88.3 | 6,940 | 93.2 | 1,730 | 82.8 | 380 | 91.2 | 2,031 | 78.3 | 2,231 | 77.4 | 5,646 | 63.5 |
| **Re-Conviction Recidivism Definition⁴** | | | | | | | | | | | | | | |
| Did Recidivate | 442 | 3.5 | 184 | 2.5 | *111‡* | *5.3* | *12‡* | *2.9* | 134 | 5.2 | 158 | 5.5 | 913 | 10.3 |
| Did *NOT* Recidivate | 12,104 | 96.5 | 7,264 | 97.5 | 1,978 | 94.7 | 404 | 97.1 | 2,458 | 94.8 | 2,723 | 94.5 | 7,981 | 89.7 |

[1] Number of offenders with a 24 month period at risk of recidivating following either initiation of probation (for offenders receiving probation-only sentences) or release from confinement (for those offenders receiving confinement sentences).

[2] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).

[3] Primary recidivism definition based on offender's re-arrest, including supervised release/ probation violations, re-arrest, or re-conviction.

[4] Re-conviction recidivism definition based solely on the offender's re-conviction, excluding any supervised release/ probation violations or re-arrests.

‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.

SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

Exhibit 7
**Number of Prior Arrests,[1] by Criminal History Category I**
**With Details for Zero Point Offender Categories**
Recidivism Study 2003

| Offender's Number of Prior Arrests[1] | CRIMINAL HISTORY CATEGORY I | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | |
| | Total Zeroes | | Group A *no arrests*[2] | | Group B *no convictions* | | Group C *never-count conv*[3] | | Remaining Zeroes | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % |
| **TOTAL** | **14,845** | **100.0** | **8,854** | **100.0** | **2,499** | **100.0** | **460** | **100.0** | **3,032** | **100.0** | **3,231** | **100.0** |
| 0 Arrests | 10,710 | 72.1 | 8,854 | 100.0 | *0‡* | *0.0* | 303 | 65.9 | 1,553 | 51.2 | 1,722 | 53.3 |
| 01 Arrest | 2,265 | 15.3 | 0 | 0.0 | 1,465 | 58.6 | 124 | *26.9* | 677 | 22.3 | 685 | 21.2 |
| 02 Arrests | 992 | 6.7 | 0 | 0.0 | 570 | 22.8 | *23‡* | *4.9* | 400 | 13.2 | 363 | 11.2 |
| 03 Arrests | 387 | 2.6 | 0 | 0.0 | 207 | 8.3 | *10‡* | *2.3* | 169 | 5.6 | 183 | 5.7 |
| 04 – 09 Arrests | 469 | 3.2 | 0 | 0.0 | 257 | 10.3 | *0‡* | *0.0* | 212 | 7.0 | 225 | 7.0 |
| 10+ Arrests | *21‡* | *0.1* | 0 | 0.0 | *0‡* | *0.0* | *0‡* | *0.0* | *21‡* | *0.7* | *52‡* | *1.6* |

[1] Prior arrests that did not result in a conviction (i.e., these arrests were found not guilty, dismissed, were pending, on warrant status, or disposition records could not be located by P.O.).

[2] Group A offender's do not have prior arrests, by definition.

[3] Prior Arrests with no dispositions and only for "never-count" convictions for the offenses specifically listed in §4A1.2(c)(2).

‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.

SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

## Exhibit 8

**Recidivism Rates, by Prior Arrests for Offenders
With No Prior Convictions**
(First Offender Group A and Group B)

| Offender's Number of Prior Arrests | Two-Year Recidivism Rates |
|---|---|
| **Group A** | |
| 0 arrests | 6.8 |
| **Group B** | |
| 1 arrest | 13.2 |
| 2 or more arrests | 23.2 |

SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data.

Exhibit 9

**Exhibit 9**
**Type of Counts That Did Not End in a Conviction,[1] by Criminal History Category I**
**With Details for Zero Point Offender Categories**
Recidivism Study 2003

| | | | CRIMINAL HISTORY CATEGORY I | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | |
| **Type of Counts That Did Not End in a Conviction** | **Total Zeroes** | | **Group A** *no arrests* | | **Group B** *no convictions* | | **Group C** *never-count conv²* | | **Remaining Zeroes** | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % |
| **TOTAL** [1] | 10,270 | 100.0 | 0 | 100.0 | 5,935 | 100.0 | 233 | 100.0 | 4,102 | 100.0 | 4,626 | 100.0 |
| **Drug Trafficking** | | | | | | | | | | | | |
| Cocaine | 309 | 3.0 | | | 265 | 4.5 | 0‡ | 0.0 | 44‡ | 1.1 | 99‡ | 2.1 |
| Crack | 87‡ | 0.8 | | | 77‡ | 1.3 | 0‡ | 0.0 | 10‡ | 0.3 | 23‡ | 0.5 |
| Marijuana | 171 | 1.7 | | | 108‡ | 1.8 | 0‡ | 0.0 | 63‡ | 1.5 | 111‡ | 2.4 |
| Other | 360 | 3.5 | | | 253 | 4.3 | 10‡ | 4.5 | 96‡ | 2.3 | 211 | 4.6 |
| **Drug Possession** | | | | | | | | | | | | |
| Cocaine | 224 | 2.2 | | | 150 | 2.5 | 0‡ | 0.0 | 73‡ | 1.8 | 105‡ | 2.3 |
| Marijuana | 436 | 4.2 | | | 229 | 3.8 | 12‡ | 5.2 | 195 | 4.8 | 153 | 3.3 |
| Other | 361 | 3.5 | Group A Offenders Have No Prior Arrests/Counts | | 200 | 3.4 | 0‡ | 0.0 | 161 | 3.9 | 105‡ | 2.3 |
| **Assault** | | | | | | | | | | | | |
| Battery | 370 | 3.6 | | | 161 | 2.7 | 21‡ | 9.0 | 188 | 4.6 | 108‡ | 2.3 |
| Aggravated | 234 | 2.3 | | | 117 | 2.0 | 0‡ | 0.0 | 117 | 2.8 | 117 | 2.5 |
| Simple | 63‡ | 0.6 | | | 42‡ | 0.7 | 0‡ | 0.0 | 21‡ | 0.5 | 42‡ | 0.9 |
| Other | 263 | 2.6 | | | 164 | 2.8 | 0‡ | 0.0 | 99‡ | 2.4 | 150 | 3.2 |
| **Fraud** | | | | | | | | | | | | |
| Insufficient Check | 354 | 3.4 | | | 278 | 4.7 | 33‡ | 14.2 | 44‡ | 1.1 | 403 | 8.7 |
| Other | 295 | 2.9 | | | 230 | 3.9 | 0‡ | 0.0 | 65‡ | 1.6 | 120 | 2.6 |

Exhibit 9 Continued . . .

Exhibit 9 Continued

**CRIMINAL HISTORY CATEGORY I**

| Type of Counts That Did Not End in a Conviction | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total Zeroes | | Group A *no arrests* | | Group B *no convictions* | | Group C *never-count conv*[2] | | Remaining Zeroes | | | |
| | N | % | N | % | N | % | N | % | N | % | N | % |
| TOTAL [1] | 10,270 | 100.0 | 0 | 100.0 | 5,935 | 100.0 | 233 | 100.0 | 4,102 | 100.0 | 4,626 | 100.0 |
| **Larceny** | | | | | | | | | | | | |
| Grand | 162 | 1.6 | | | *110‡* | *1.8* | *0‡* | *0.0* | *52‡* | *1.3* | 117 | 2.5 |
| Petty | 181 | 1.8 | | | 113 | 1.9 | *0‡* | *0.0* | *68‡* | *1.6* | *91‡* | *1.9* |
| Shoplifting | 166 | 1.6 | | | *101‡* | *1.7* | *0‡* | *0.0* | *65‡* | *1.6* | *31‡* | *0.7* |
| Burglary | 208 | 2.0 | | | 131 | 2.2 | *0‡* | *0.0* | *77‡* | *1.9* | *89‡* | *1.9* |
| Other | 345 | 3.4 | | | 153 | 2.6 | *0‡* | *0.0* | 192 | 4.7 | 239 | 5.2 |
| **Traffic** | | | Group A Offenders Have No Prior Arrests/Counts | | | | | | | | | |
| DUI | 441 | 4.3 | | | 225 | 3.8 | *0‡* | *0.0* | 216 | 5.3 | 204 | 4.4 |
| Reckless Driving | 200 | 1.9 | | | 155 | 2.6 | *23‡* | *9.7* | *23‡* | *0.5* | *21‡* | *0.5* |
| Driving w/o a License or Suspended | 368 | 3.6 | | | 131 | 2.2 | *23‡* | *9.7* | 215 | 5.2 | 164 | 3.5 |
| Other | 623 | 6.1 | | | 370 | 6.2 | *0‡* | *0.0* | 253 | 6.2 | 248 | 5.4 |
| **Other** | | | | | | | | | | | | |
| Failure to Appear/ Pay Fine | 426 | 4.1 | | | *99‡* | *1.7* | *0‡* | *0.0* | 326 | 7.9 | 245 | 5.3 |
| All Other Offenses | 3,623 | 35.3 | | | 2,073 | 34.9 | *111‡* | *47.7* | 1,439 | 35.1 | 1,427 | 30.9 |

[1] The disposition of these counts were either dismissed, not guilty, pending, on warrant status, the disposition could not be located by the P.O., or anything else other than guilty. The N does not represent people, cases, or arrests rather the number of *counts* for each variable.

[2] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).

‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.

SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.

### Exhibit 10
### Prior Arrest Characteristics,[1] by Criminal History Category I
### With Details for Zero Point Offender Categories
Recidivism Study 2003

## CRIMINAL HISTORY CATEGORY I

| | ZERO POINT OFFENDERS | | | | | | | | | | ONE POINT OFFENDERS | |
| | Total Zeroes | | Group A no arrests | | Group B no convictions | | Group C never-count conv[2] | | Remaining Zeroes | | | |
| Prior Arrest Characteristics | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL[1] | 8,059 | 100.0 | 0 | 100.0 | 4,545 | 100.0 | 200 | 100.0 | 3,313 | 100.0 | 3,723 | 100.0 |
| **Disposition of Arrest** | | | | | | | | | | | | |
| Not Guilty | 187 | 2.5 | | | 56‡ | 1.4 | 0‡ | 0.0 | 131 | 4.0 | 75‡ | 2.0 |
| Dismissed | 3,312 | 44.8 | | | 1,780 | 45.4 | 133 | 69.8 | 1,400 | 42.7 | 1,625 | 44.2 |
| Pending | 1,927 | 26.1 | Group A | | 1,037 | 26.5 | 24‡ | 12.8 | 866 | 26.4 | 1,208 | 32.8 |
| Warrant | 780 | 10.6 | Offenders | | 617 | 15.7 | 0‡ | 0.0 | 164 | 5.0 | 42‡ | 1.1 |
| P.O. Not Find Disposition Record | 1,067 | 14.4 | Have No Prior | | 369 | 9.4 | 33‡ | 17.4 | 665 | 20.2 | 721 | 19.6 |
| Other | 119 | 1.6 | Arrests/Counts | | 63‡ | 1.6 | 0‡ | 0.0 | 56‡ | 1.7 | 10‡ | 0.3 |
| **Dangerous Prior Arrest Conduct[3]** | | | | | | | | | | | | |
| Yes | 1,176 | 14.6 | | | 764 | 16.8 | 0‡ | 0.0 | 412 | 12.4 | 204 | 5.5 |

[1] Prior arrests that did not result in a conviction (i.e., these arrests were found not guilty, dismissed, were pending, on warrant status, or disposition records could not be located by P.O.). The N represents the total number of prior arrests not leading to convictions.

[2] Prior Arrests with no dispositions and convictions for only the "never-count" offenses specifically listed in §4A1.2(c)(2).

[3] Dangerousness indicates whether or not an offender in the Commission of their prior arrest either threatened or caused actual violence or injury and or a weapon was involved. Missing values are counted as "No" dangerousness present.

‡ Indicates fewer than 10 sample subjects. Findings may not be statistically significant.

SOURCE: U.S. Sentencing Commission, FY1992 Recidivism Sample (U.S. Citizens), 2003, weighted data. Missing data are excluded, unless specified.